<HTML>

<HEAD>

<META NAME="Generator" CONTENT="WordPerfect">

<TITLE></TITLE>

</HEAD>

<BODY TEXT="#000000" LINK="#0000ff" VLINK="#551a8b" ALINK="#ff0000" BGCOLOR="#c0c0c0">

NUMBER 13-04-499-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

                                                                                                                     

DANIEL PODOLNY AND

VIRGINIA PODOLNY,        Appellants,

v.

ELLIOTT TURBOMACHINERY

COMPANY, INC.,           Appellee.

                                                                                                                                      

On appeal from the 214th District Court of Nueces County, Texas.

                                                                                                                     

MEMORANDUM OPINION

Before Justices Hinojosa, (1) Yañez, and Rodriguez

Memorandum Opinion by Justice Yañez

Daniel and Virginia Podolny filed a personal injury suit against Elliott

Turbomachinery Company, Inc. ("Elliott").  In the suit, Daniel Podolny ("Podolny") alleged

that Elliott contributed to him acquiring asbestos-related lung cancer.  The trial court

granted summary judgment for Elliott based on limitations.  We affirm the judgment.

Facts

Podolny asserted the following in his deposition and affidavit. (2)  In 1996, Podolny

was diagnosed with lung cancer; prior to his diagnosis, doctors informed him that he had

pleural calcification on his lungs.  He asserts, however, that doctors never told him his

pleural calcification and lung cancer were caused by his prior exposure to asbestos while

serving in the Navy.  In May 2000, Podolny went to a Navy reunion where he received

literature from a law firm; (3) the literature stated that lung and breathing problems could be

caused by asbestos exposure.  Podolny later contacted this law firm to inquire as to

whether his pleural calcification was caused by asbestos exposure; Podolny asserts that

he did not associate his lung cancer with his asbestos exposure at this time, nor did he

inform anyone from the law firm that he had lung cancer.  Podolny was eventually referred

to another law firm, Waters & Kraus; his first contact with this firm was in October 2000,

at which time he provided the firm with information about his asbestos exposure and

medical history.  At some later point, an attorney from Waters & Kraus told Podolny that

his lung cancer was likely caused by asbestos; according to Podolny, this was the first time

someone told him of a connection between his lung cancer and asbestos exposure.  

Podolny thus asserts that the limitations period for his lung cancer could not have started

running any sooner than October 2000--less than two years prior to his filing suit against

Elliott on August 22, 2002.  He further asserts that it is arguable that the limitations period

did not start running until January 26, 2002--the date when a medical doctor first attributed

Podolny's lung cancer to asbestos exposure.  

Medical reports attached to Elliott's motion for summary judgment shed additional

light on Podolny's medical history.  One report reveals that Podolny was diagnosed with

asbestosis on August 15, 1984.  Six subsequent reports, which are dated from July 7,

1985, to October 8, 1996, refer to either Podolny's past asbestos exposure, his asbestosis,

or the presence of pleural plaque and pleural calcification on his lungs. (4)  A later medical

report shows that Podolny was diagnosed with lung cancer in November of 1996; under

the headline "History of Present Illness," the report notes that Podolny's "chest x-ray

revealed multiple densities suggestive of pleural plaque from history of asbestos

exposure."  Lastly, a radiology report from April 2000, which discusses observations made

from a CAT scan of Podolny's chest, states the following:  "Diagnosis: lung ca aesbestos

[sic] exposure."  Elliott asserts that these medical reports show that Podolny knew there

was a connection between pulmonary disease and asbestos; therefore, upon learning of

his lung cancer, he should have known that it was related to his asbestos exposure long

before October 2000.

Standard of Review

A defendant seeking summary judgment based on the statute of limitations must

conclusively prove the elements of that affirmative defense. (5)  When the plaintiff contends

that the discovery rule exempts him from the statute of limitations, the defendant bears the

burden to negate that exception. (6)  The defendant must prove when the cause of action

accrued and negate the plaintiff's assertion of the discovery rule by proving that it does not

apply or that there is no genuine issue of fact about when he discovered or should have

discovered the nature of his injury. (7)

A lawsuit based on a personal injury claim must be filed within two years from the

date the injury accrues. (8)  Latent asbestos-related injuries or diseases are governed by the

discovery rule. (9)  Under the discovery rule, a cause of action accrues when a plaintiff knows

or, through the exercise of reasonable care and diligence, should have known of the

wrongful act and resulting injury. (10)  A cause of action for a latent occupational disease does

not accrue until (1) symptoms manifest to a degree or for a duration that would put a

reasonable person on notice that he has suffered an injury and (2) he knows or in the

exercise of reasonable diligence should have known that the injury is likely work-related. (11)  

A latent occupational disease claim does not accrue "until a reasonably diligent plaintiff

uncovers some evidence of a causal connection between the injury and the plaintiff's

occupation." (12)

To affirm a trial court's summary judgment, we must find that there is no genuine

issue of material fact regarding the accrual of the statute of limitations and that the

movants showed they were entitled to judgment as a matter of law. (13)  In making this

determination, we must resolve all doubts and view all evidence and reasonable inferences

in the nonmovant's favor. (14)

Discussion

We begin by first rejecting Podolny's contention that the limitations period did not

start to run until he received a confirmed medical diagnosis that his lung cancer resulted

from asbestos exposure, which occurred on January 26, 2002.  According to the supreme

court:

The accrual of a cause of action is not dependent on a confirmed medical

diagnosis; a plaintiff whose condition has not yet been affirmatively

diagnosed by a physician can have or, in the exercise of reasonable

diligence could have, access to information that requires or would require a

reasonable person to conclude he likely suffers from a work-related illness.  

But even if the plaintiff lacks such information, his or her cause of action will

nevertheless accrue if the absence of due diligence is responsible for the

deficiency.  Thus, while a diagnosis of a latent occupational disease would

be sufficient to start the limitations period, a final diagnosis is not always

necessary before a cause of action can accrue. (15)

Podolny's assertion that the limitations period for his lung cancer could not have started

running any sooner than October 2000, at which time an attorney first apprised him of a

connection between his lung cancer and asbestos exposure, is also problematic.  Though

he contends his doctors failed to inform him that his lung cancer was caused by asbestos,

Podolny was responsible for diligently seeking "medical advice about the nature of his

injury and the potential causes." (16)  Podolny does not assert that he ever inquired as to what

caused his lung cancer, nor does he assert that doctors gave him reason to believe that

asbestos was not the cause.  Under these circumstances, we find that a reasonably

diligent person would have asked a doctor if his injury was likely work-related.  

Nevertheless, even though Podolny failed to exercise due diligence in seeking medical

advice about the cause of his injury, a fact question in this case will remain if Elliott did not

offer any summary judgment evidence showing that a diligent inquiry would have led

Podolny to discover before August 22, 2000, that he suffered from an occupational

illness. (17)

As discussed earlier, Elliott's motion for summary judgment included Podolny's

medical reports, one of which was made in April 2000.  We believe this report, which

contained the statement, "Diagnosis: lung ca aesbestos [sic] exposure," provides sufficient

evidence that had Podolny made a diligent inquiry as to what caused his injury, he would

have discovered, prior to August 22, 2000, that his lung cancer was caused by asbestos

exposure.  Accordingly, we conclude that there is no genuine issue of material fact

regarding the accrual of the statute of limitations and that Elliott is entitled to summary

judgment as a matter of law.

Conclusion

We affirm the judgment of the trial court.

                                                                                                                     

LINDA REYNA YAÑEZ,

Justice

Justice Federico G. Hinojosa not participating.

Memorandum opinion delivered and filed

this the 1st day of February, 2007.

1. The Honorable Federico G. Hinojosa, former Justice of this Court, did not participate in this opinion

because his term of office expired December 31, 2006.  See Tex. R. App. P. 41.1(c).

2. We will accept as true the facts stated in the appellant's brief unless another party contradicts them.  

See Tex. R. App. P. 38.1(f).

3. The name of this law firm was not provided.

4. In one of these reports, dated September 29, 1994, Dr. Joan E. Trey writes the following:  "[Podolny

and I] did discuss his history of asbestos exposure and the presence of pleural plaques as he has obtained

information about a large class action suite [sic] against the asbestos industry."

5. Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d 643, 646 (Tex. 2000).

6. Id.

7. Zacharie v. U.S. Natural Res., Inc., 94 S.W.3d 748, 752 (Tex. App.-San Antonio 2002, no pet.).

8. See Tex. Civ. Prac. & Rem. Code Ann.  16.003(a) (Vernon Supp. 2006).

9. See Childs v. Haussecker, 974 S.W.2d 31, 37 (Tex. 1998).

10. Id. at 37.

11. Id. at 40.

12. Id. at 41.

13. See Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex. 1990).

14. Tex. R. Civ. P. 166a(c); Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

15. Childs, 974 S.W.2d at 42 (citations omitted).

16. See id. at 47 (emphasis added).

17. Id.

</BODY>

</HTML>